UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLOTTE R. KELLER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | CASE NO.   **C07-5597RJB**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 6, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

Plaintiff, Charlotte Keller, was born in 1955 (Tr. 51). She obtained a high school education (Tr. 67). She has past relevant work experience that included light, semi-skilled work as a general clerk and care provider, and sedentary skilled work as a manager of a women's shelter, a bookkeeper and a programmer (Tr. 73-80).

Ms. Keller filed an application for Social Security Disability Benefits on November 25, 2002. (Tr. 51-53, 483). Ms. Keller's date last insured is December 31, 2001. She alleged disability since April 15, 1996, due to diabetes with neuropathy, bilateral ulnar epicondylitis, morbid obesity, sleep apnea,

REPORT AND RECOMMENDATION
Page - 1

decreased concentration, depression, and a mixed personality disorder with passive-aggressive, dependent and schizoid features (Tr. 51, 56).

Her application was denied initially, on reconsideration, and also by Administrative Law Judge Ralph W. Jones, in a decision dated October 8, 2004. (Tr. 12-22). Ms. Keller requested review by the Appeals Council which, on May 11, 2005, denied her request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (Tr. 5-8). A timely Complaint was filed with the Court.

On April 10, 2006, based on a report and recommendation by the undersigned, the Honorable Ronald B. Leighton issued an Order remanding Ms. Keller's disability claim for a new hearing. (Tr. 543). The court found ALJ Jones had failed to properly consider Plaintiff's anxiety disorder, arthritis and sleep apnea. On May 17, 2007, a remand hearing was held. (Tr. 595-615). On July 9, 2007, Administrative Law Judge Dan R. Hyatt ("the ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 480-94). A timely complaint was again filed in Federal District Court. The court notes, Ms. Keller filed a new application for SSI disability benefits, which is not limited by a "date last insured", and she was found to be disabled effective November 2005. (Tr. 483).

ALJ Hyatt's decision is the final administrative decision under review. The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 486). At step two, the ALJ found that Plaintiff had the following severe impairments: right lateral epicondylitis; diabetes with diabetic neuropathy; depression; anxiety; and a personality disorder (Tr. 486).

At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or equal the requirements of a listed impairment (Tr. 486). The ALJ further determined that Plaintiff had the residual functional capacity to perform sedentary to light work. Specifically, the ALJ found she was limited to only occasional pushing/pulling with her upper and lower extremities. She has only occasional use of ladders, ropes, or scaffolds; she was limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Finally, Plaintiff was precluded from contact with the general public and limited to only incidental interaction with supervisors and co-workers (Tr. 488).

At step four, the ALJ found that, based on vocational expert testimony, Plaintiff was able

1  to perform her past relevant work of bookkeeper or home care provider (Tr. 493).  Because the ALJ found
2  Plaintiff not disabled at step four, the ALJ properly did not proceed to step five, the final step of the
3  sequential evaluation process to determine if Plaintiff retains the ability to do other jobs within the
4  national economy.

5  Plaintiff filed his Complaint with the Court challenging the denial of his applications for benefits
6  on August 28, 2006.  Specifically, plaintiff contends: (1) the ALJ failed to properly consider all of
7  Plaintiff's severe impairments; (2) the ALJ failed to give appropriate weight to the opinion of Plaintiff's
8  treating and examining physicians and psychologists; (3) the ALJ failed to give appropriate weight to the
9  opinion of claimant's vocational counselors; (4) the ALJ failed to properly consider Plaintiff's testimony
10 regarding her symptoms and limitations; (5) the ALJ failed to properly consider whether Plaintiff met or
11 equaled the B and C criteria in Listings 12.04 and/or 12.06 and/or 12.08; (6) the ALJ improperly
12 determined Plaintiff's residual functional capacity; (7) the Commissioner erroneously found that Plaintiff
13 can perform her past relevant work; (8) the Commissioner failed to meet the burden of showing that
14 Plaintiff can perform any work in the national economy; and (9) the ALJ erred in failing to obtain
15 testimony from a medical expert.  Defendant counter-argues that the ALJ applied the proper legal
16 standards and that the administrative findings and conclusions are properly supported by substantial
17 evidence.

18                                                    DISCUSSION

19  This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the
20 proper legal standard and there is substantial evidence in the record as a whole to support the decision.
21 Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence
22 as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.
23 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less
24 than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.
25 Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational
26 interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th
27 Cir. 1984).

28 **A.    THE ALJ DID NOT ERR WHEN HE FOUND MS. KELLER'S ARTHRITIS AND SLEEP APNEA
            TO NOT BE "SEVERE" IMPAIRMENTS**

REPORT AND RECOMMENDATION
Page - 3

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" **only** if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to work." *See* SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR 85-28)(emphasis added).

Previously, the undersigned found ALJ Jones erred when he failed to consider Plaintiff's anxiety, arthritis, and sleep apnea at step-two of the administrative process. The medical evidence, particularly the opinions of Dr. Schneider and Dr. Pieper provided in 2002, supported a finding that Plaintiff's anxiety possibly had more than a minimal effect on Ms. Keller's ability to work during the relevant time period. Plaintiff's last date insured for disability benefits is December 31, 2001). On remand, based on this medical evidence, the administration was directed to reconsider, "Ms. Keller's residual functional capacity when the ALJ includes all of her severe impairments," and "on review the ALJ must make a determination of onset date for each of her various alleged severe impairments and the severity during the relevant time period." Plaintiff was provided the opportunity to raise additional arguments and evidence to support her application for disability benefits.

On remand, ALJ Hyatt found Plaintiff's anxiety, but not her arthritis or sleep apnea, to be severe impairments. ALJ Hyatt wrote the following:

> The burden is on the claimant to show a medically determinable impairment and to submit medical and other evidence from acceptable sources demonstrating medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence and severity of the impairment. Furthermore, in this case, the claimant must establish that these impairments existed on or prior to December 31, 2001,

REPORT AND RECOMMENDATION
Page - 4

> the date she was last insured for disability benefits. The undersigned has determined, based on a review of all of the evidence, including testimony at the hearing, that the [sic] some of the impairments alleged by the claimant are not severe within the ambit of the Regulations. The claimant was diagnosed with obstructive sleep apnea in April 2004, which is well controlled with a CPAP unit (Exhibit 13F: 288). In addition, the claimant has been diagnosed with a left rotator cuff tear and ulnar apicondylitis, which cause occasional symptoms that are resolved with conservative treatment (Exhibits 10F: 98, 143, 148; and 13F: 291). With nothing more to corroborate the frequency and intensity of the claimant's alleged symptoms, the undersigned must conclude that these impairments do not significantly limit her physical or mental ability to do basic work activities and are not severe.

(Tr. 486).

On remand, Plaintiff did not cite or reference any significant evidence to support her argument that her arthritis and sleep apnea were severe impairments prior to December 31, 2001. The most relevant medical evidence was provided by Dr. Vilhauer, who wrote in a treatment note dated July 23, 2003, that Plaintiff's back pain was most likely arthritis related with possible muscle spasm. A follow-up x-ray report dated July 23, 2003, showed evidence of arthritis in the lumbar sacral area. In a treatment note dated May 20, 2004, Dr. Vilhauer noted that Ms. Keller had just been diagnosed with obstructive sleep apnea and had just started CPAP. As noted and explained by the ALJ, the evidence does not support a finding of impairment during the relevant time period. Plaintiff did not show or satisfy her burden of proving that her arthritis and sleep apnea caused more than slight abnormality that had  more than a minimal effect on her ability to work prior to January 1, 2002.

*B.  THE ALJ PROPERLY ASSESSED THE PROFESSIONAL AND LAY MEDICAL OPINIONS*

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the

1   ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from
2   the claimant that conflicted with the treating physician's opinion.

3         Here, Plaintiff contends the ALJ improperly evaluated the opinions of Dr. Schneider, Dr. Pieper,
4   and Dr. Vilhauer.  Plaintiff further argues the court should credit these opinions as true, pursuant to
5   Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  After reviewing the medical records and the ALJ's
6   opinion, the undersigned is not persuaded by Plaintiff's arguments.

7         The court first notes the difficulty in this case, when the medical evidence on record does not
8   include any medical opinions produced during the relevant time period, and the post date last insured
9   evidence is conflicting.  The ALJ's analysis of the medical record is appropriately supported by
10  substantial evidence in the record and free of legal error.  In his written decision, the ALJ summarized the
11  medical evidence on record.  He specifically addressed the opinions of Dr. Schneider, Dr. Pieper, and Dr.
12  Vilhauer.  After discounting Plaintiff's credibility (which is discussed below, the ALJ wrote the
13  following regarding the medical opinion evidence:

> As for the opinion evidence, Robert E. Schneider, Ph.D., performed a consultative psychological evaluation of the claimant on June 3, 2002, estimating her global assessment of functioning (GAF) to equal 40, which denotes a serious impairment in social or occupational functioning.  He further opined that due to her strong belief in her disability, the claimant was functionally unable to work competitively outside her home (Exhibit 5F).  Dr. Schneider apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant – ignoring the objective evidence that tended to suggest that the claimant was still capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis – and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimants's subjective complaints.  For these reasons, Dr. Schneider's opinions cannot be afforded significant weight.
>
> [Omitted].
>
> Curiously, on January 14, 2005, Dr. Pieper wrote a letter in which she described the claimant as frustrated, depressed, discouraged and significantly affected by social anxiety.  She went on to opine that the claimant would – because of her social anxiety – be "unlikely to succeed" at employment requiring ongoing interaction or daily contact with others.  Furthermore, in Dr. Pieper's opinion, the claimant's depression and physical symptoms would limit her ability to work for extended periods of time, to follow a fixed schedule, or be consistent in her productivity level.  Finally, she describes some of the claimants' strong points, but tries to explain how the claimant's "characterological" deficits prevent her from taking advantage of them.  Dr. Peiper estimated the claimant's GAF to equal 40 (Exhibit AC-4).  It is emphasized that the opinion in question appears to have been offered not in an attempt to coordinate treatment for of the [sic] claimant's symptoms, but rather, at the request of her representative in connection with an effort to generate evidence for the current appeal.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely

REPORT AND RECOMMENDATION
Page - 6

> ignored.  Moreover, Dr. Pieper's opinion appears to rest at least in part on an assessment of the claimant's physical impairments, which are outside her area of expertise.  Finally, even though Dr. Pieper protests that her clinical notes were taken out of context their clear meaning belies the level of functional imitation she describes in her letter.  These issues suggest that Dr. Pieper inadvertently stepped out of her role as an objective treating medical source and assumed the role of advocate.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the medical source's clinical notes, as in the current case.  Therefore, the undersigned gives significant weight to Dr. Pieper's clinical notes, but not to her opinion offered in January 2005.
>
> Allison Vilhauer, M.D., the claimant's most recent primary care physician, wrote a letter on January 6, 2005, describing her interpretation of the claimant's physical and mental impairments, and offering the opinion that they "negatively impact [the claimant's] ability to work" (Exhibit AC-5).  Again, it appears to have been offered not in an attempt to coordinate treatment for of [sic] the claimant's symptoms, but rather, at the request of her representative in connection with an effort to generate evidence for the current appeal.  Moreover, Dr. Vilhauer's opinion also appears to rest at least in part on an assessment of the claimant's mental impairments, which are outside her area of expertise; and is so brief and conclusory that it lacks strong persuasive weight, failing to explain how the claimant's impairments limited her ability to lift and carry, to sit, stand and walk,to perform postural or manipulative tasks or to fulfill the basic mental demands of competitive, remunerative, unskilled work.  Consequently, the undersigned concludes that it cannot be afforded significant weight.

(Tr. 491-492).

The ALJ provided legitimate reasons for discounting the medical opinions of  Dr. Schneider, Dr. Pieper, and Dr. Vilhauer.  *See* <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir.1989)(the Court explained the ALJ was permitted to reject opinions and notes of a treating physician's which were based on a claimant's discredited subjective complaints).   In sum, the court recognizes that the ALJ has an advantage of looking at the medical records from a longitudinal standpoint, as well as, in light of the allegations of a claimant (Plaintiff's credibility is discussed below).  Here, the ALJ concluded Plaintiff retained the ability to perform past relevant work during the relevant time period (Tr. 493).  The ALJ relied on substantial medical evidence to support this finding.  He explained:

> A psychological consultant examined the record for the Agency on January 24, 2003, concluding that since May 2002  [The State Agency psychological consultant concluded that there was insufficient evidence to find a mental impairment prior to May 2002]. the claimant experienced mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning and no difficulties in maintaining concentration, persistence and pace, with evidence of no more than two extended episodes of decompensation 9Exhibit 8F).  The psychological consultant concluded in an assessment of the claimant's mental residual functional capacity that since May 2002 she was moderately limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, and to make simple work-related

> decisions. Furthermore, she was moderately limited in her ability to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Finally, the psychological consultant concluded that the claimant was moderately limited in her ability to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. Nonetheless, the psychological consultant opined that the claimant was capable of performing detailed tasks despite her problems with social interaction and adaptations (Exhibit 9F). The conclusions and opinions of the State Agency psychological consultant were affirmed on May 19, 2003.
>
> A medical consultant examined the record for the Agency on January 24, 2003, concluding that since April 2001 [the State Agency medical consultant concluded that there was insufficient evidence to find a physical impairment prior to April 2001], the claimant retained the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently. Furthermore, the claimant could sit for up to six hours and stand or walk for up to two hours during an eight-hour day. The medical consultant also concluded that the claimant should not be required to push and pull with her bilateral upper extremities or to use ladders, ropes or scaffolds; and that she was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling. Finally, the medical consultant concluded that the claimant should avoid concentrated exposure to vibrating machines. The conclusions and opinions of the State Agency medical consultant were affirmed on May 21, 2003 (Exhibit 11F).
>
> With the exception of the additional limitations set forth above, the undersigned finds that the opinions of the State Agency medical and psychological consultants are consistent with the clinical record and accurately describe the functional impact of the medically determinable impairments upon the claimant (Social Security Ruling 96-6p).

(Tr. 492-493).

Review of the medical record supports the ALJ's decision. On May 21, 2003, Dr. Hoskins reviewed and affirmed the physical evaluation performed by the State Agency (Tr. 267), which states there is insufficient evidence to determine Plaintiff's residual functional capacity through April 2001, and is limited to a "sedentary" range of capability (Tr. 269). Similarly, Dr. Regets and Dr. Eather, State Agency psychologists, conferred regarding Plaintiff's mental impairments and found Plaintiff was capable of working (Tr. 188-190). The ALJ's residual functional capacity finding is properly supported by this medical evidence.

C.   *THE ALJ PROPERLY WEIGHED PLAINTIFF'S CREDIBILITY*

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a

REPORT AND RECOMMENDATION
Page - 8

1 claimant's testimony regarding pain.'" Id. at 345-46 (quoting <u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job.  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in <u>Fair v. Bowen</u>, *supra*, and <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Here, Plaintiff argues the ALJ improperly considered her testimony regarding her symptoms and limitations.  As noted above, the ALJ did not find Ms. Keller's allegations of total disability credible.  The ALJ addressed Plaintiff's testimony in the context of assessing her residual functional capacity.  The ALJ wrote:

> The claimant's main contention is that she was suicidal and psychologically unable to perform sustained, competitive work on a regular and continuing basis for a normal eight-hour workday.  The claimant explained at the first hearing that because of her social anxiety disorder she could not work around other people.  She said that she had tried to return to work as a temporary employee, but said that after a week or two she would start having anxiety attacks and would stop going to work.  On the other hand, the claimant admitted that she believed she could work if she chose to, as long as she did not have to be around other people.  She described how she was trying to start a business with the assistance of the DVR, but that she was having difficulty building a customer base because of her reluctance to approach others.  The claimant also explained that she had not been compliant with her medial regimen because she could not afford it at first.  She testified that when her medications became available in generic form she was able to obtain them, and admitted that they "helped a lot".
>
> In addition, the claimant contends that her physical impairments constituted an additional barrier to her entering the workforce.  She testified at the first hearing that because of her foot problems she is unable to balance or walk without falling, and could not sit for prolonged periods of time.  Furthermore, she had chronic uticaria, which prevented her from wearing tight clothing and made her heat intolerant.  She explained that her psychological and physical difficulties mean she could never follow a set schedule and work in an office.
>
> When asked what she expected to gain from going on Social Security, the claimant said that she hoped to get financially independent of her mother while she got her business up and running.  She asserted that her accounting and bookkeeping skills were "very, very good", but admitted that the work bored her, and that she "had a very hard time motivating [herself] to do stuff".
>
> The claimant's allegations as to the existence of her symptoms are consistent and supported by the medical records, insofar as they confirm that she has conditions that could reasonably be expected to produce some of the symptoms she alleges.  However, while it is clear that the claimant intends to be truthful and sincerely believes the substance

REPORT AND RECOMMENDATION
Page - 9

> of her testimony, her allegations as to the intensity, persistence and limiting effects of these symptoms are disproportionate and not sufficiently supported by the objective medical findings or any other corroborating evidence. For example, the record reflects the claimant has received treatment for her allegedly disabling symptoms, which would normally weigh somewhat in her favor. However, it also reveals that the treatment has been essentially routine and/or conservative in nature, and – when the claimant has complied with her medical regimen – it has been generally successful in controlling those symptoms.
>
> Furthermore, although the claimant has described daily activities which are fairly limited, three factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Finally, the record reflects that the claimant has engaged in daily activities that are not limited to the extent one would respect, given the complaint of disabling symptoms and limitations. She has written that she can care for herself without assistance, prepare simple meals, perform light housework, shop for groceries and household items in stores and online, and drive an automobile. She also writes that she reads for six to ten hours and watches television for three hours per day (Exhibit 5E). Furthermore, despite her allegation of symptoms and limitations preventing all work, the record reflects that she has worked extensively with a vocational rehabilitation counselor since August 2003. This counselor wrote that the claimant prepared "an incredibly detailed business plan" and developed a wide array of marketing strategies, in order to launch a home-based business that required only minimal interaction with other persons (Exhibit AC-3). Naturally, this does not constitute a disqualifying work activity, but along with her activities of daily living it does tend to suggest that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported, and that she may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> Finally, it cannot be entirely ignored the claimant has admitted on many occasions that she found it hard to continue work because of "boredom" and "lack of motivation", and has stated that she could work if she fond a job that "interested her".

(Tr. 489-490).

After reviewing the ALJ's decision and the administrative record, the undersigned finds the ALJ has provided sufficient reasons to discredit the Plaintiff's allegations of total disability. The medical evidence discussed above is inconsistent with Plaintiff's subjective complaints and Plaintiff's activities do not support a finding of disability. Accordingly, the ALJ properly discredited plaintiff's testimony and allegations suggesting total disability.

Plaintiff also argues the ALJ failed to properly consider the opinions of Plaintiff's vocational counselors – Karen Heater and Susan Kelsey. Plaintiff specifically argues Plaintiff's counselors each offered statements supporting greater mental limitations than concluded by the ALJ. However, the ALJ's residual functional capacity finding accommodated the some of the limitations observed by these lay

witnesses. (Tr. 428, 573, 488). For instance, the ALJ precluded Plaintiff from contact with the general public and limited to only incidental interaction with supervisors and co-workers (Tr. 488). The ALJ did not err in his consideration of this lay witness evidence

**D.     THE ALJ PROPERLY CONCLUDED PLAINTIFF'S IMPAIRMENTS DID NOT MEET OR EQUAL A LISTED IMPAIRMENT**

Plaintiff next argues the ALJ failed to properly consider whether Plaintiff met or equaled the B and C criteria in Listings 12.04 and/or 12.06 and/or 12.08.

If the claimant has an impairment(s) which has lasted or can be expected to last for not less than 12 months, and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment(s), the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). In the present case, the ALJ concluded:

> The undersigned has specifically considered section 1.02, concerning dysfunction of the major joints, section 9.08, concerning diabetes and diabetic neuropathy, section 12.04, concerning affective disorders, section 12.06, concerning anxiety disorders, and section 12.08, concerning personality disorders.
>
> [Omitted].
>
> The criteria for section 12.04 require (A) medical documentation of a disturbance of mood, accompanied by a full or partial manic, depressive or bipolar syndrome resulting in (B) at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. Alternatively (C) there must be medical documentation of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms and signs currently attenuated by medication or psychosocial support, and (1) repeated extended episodes of decompensation; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or a change in the environment would cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. In this case the claimant has failed to demonstrate the marked level of impairment described in (B) or any of the special situations described in (C).
>
> The criteria for section 12.06 require medical documentation of certain symptoms of anxiety. These symptoms are: generalized persistent anxiety, or a persistent irrational fear and resulting avoidance of a specific object, activity or situation, or recurrent severe panic attacks occurring on the average of at least once per week, or recurrent obsessions or compulsions resulting in marked distress, or recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. Furthermore, these symptoms must result in (B) at least two fo the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. Alternatively (C), there must be medical documentation of a complete inability to function outside the area of one's home. In this case the claimant has

> failed to demonstrate the marked level of impairment described in (b) or any of the special situations described in (C).
>
> The criteria for section 12.08 require documentation of deeply ingrained, maladaptive patterns of behavior associated with one of the following: seclusiveness or autistic thinking <u>or</u>, pathologically inappropriate suspiciousness or hostility <u>or</u>, oddities of thought, perception, speech or behavior <u>or</u>, persistent disturbances of mood or affect <u>or</u>, pathological dependence, passivity or aggressiveness <u>or</u>, intense and unstable interpersonal relationships and impulsive and damaging behavior. Furthermore, the claimant's condition must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The claimant has failed to demonstrate the marked restrictions or difficulties necessary to satisfy these criteria.
>
> Finally, obesity is not itself a listed impairment, but a claimant with obesity may be found to "meet" the requirements of a listing if there is an impairment that, in combination with obesity, meets the requirements of a listing. Obesity, by itself or in combination with other impairments, may also be found "medically equivalent" to a listed impairment (SSR 02-01p). While the claimant's obesity may result in some fatigue and low back pain, and make it more difficult for her to balance, stand or walk on a prolonged basis, nonetheless it is not of the nature or severity to warrant a finding of disability under the medical criteria.
>
> Considering the foregoing, the undersigned finds that the claimant's impairments or the combination of her impairments do not meet or medically equal the criteria set forth for any impairment in the listings.

(Tr. 487-488).

Substantial evidence supports the ALJ's decision regarding whether or not Ms. Keller's impairments met or equaled the criteria for 12.04, 12.06, or 12.08 of the Listings. Plaintiff's argument that the ALJ erred when he made this decision is based on the argument that the ALJ failed to properly credit the medical opinions and her testimony. As discussed above, the ALJ properly reviewed the evidence and relied on the State Agency consultant to formulate Plaintiff's residual functional capacity. Moreover, the ALJ properly weighed Plaintiff's subjective complaints. Accordingly, this court finds substantial evidence supporting the ALJ's determination that plaintiff's impairments do not meet or equal any "Listed" impairment.

E.   *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF WAS ABLE TO PERFORM PAST RELEVANT WORK DURING THE RELEVANT TIME PERIOD*

Plaintiff argues the ALJ erred when he considered Plaintiff's residual functional capacity and concluded that Plaintiff was capable of performing her past work as a bookkeeper.

At step-four in the evaluation process, the ALJ must determine if an impairment(s) prevents the claimant from doing past relevant work. If the ALJ finds that the claimant has not shown that he is

incapable of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends at this point. 20 C.F.R. § 404.1520(e). Plaintiff bears the burden to establish that she cannot perform his past work. Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1356 (1996).

Based on Plaintiff's residual functional capacity, the ALJ found Plaintiff retained the ability to perform past work as a bookkeeper (Tr. 493). The ALJ's conclusion is based on his finding that Plaintiff is capable of performing sedentary to light work (Tr. 488). The vocational expert testified that a person with a residual functional capacity similar to Plaintiff's would be able to do work as a bookkeeper, which is rated as a sedentary, semiskilled job (Tr. 533-534).

Plaintiff's allegations that the ALJ erred when he determined Plaintiff's RFC and concluded that she was able to work as a bookkeeper are without merit. Plaintiff's arguments are again premised on the argument that (i) the ALJ failed to properly consider the medical evidence, (ii) the ALJ failed to properly credit Plaintiff's allegations regarding the severity of her impairments, and (iii) the ALJ failed to properly consider whether her impairments met the criteria of a "Listed" impairment. As explained above, the ALJ did not err in his analysis of the medical evidence, Plaintiff's credibility, or Plaintiff's severe impairments. The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Accordingly, the ALJ properly questioned the Vocational Expert and relied on the testimony which supports the finding that Plaintiff retains the ability to do certain types of sedentary work. Having found Plaintiff was not disabled at step-four in the administrative process, the ALJ did not, and was not required to, proceed to step-five (to determine if there were any other jobs within the national economy which Plaintiff was capable of performing during the relevant time period).

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating

the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 6, 2008**, as noted in the caption.

DATED this 16th day of May, 2008.

                                         */s/ J. Kelley Arnold*
                                         J. Kelley Arnold
                                         U.S. Magistrate Judge